U UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SEACOR MARINE, LLC**<br><br>**VERSUS**<br><br>**GOL, LLC** | **CIVIL ACTION NO: 2:24-CV-02409**<br><br>**SECTION R:**<br>**DISTRICT JUDGE SARAH S. VANCE**<br><br>**DIVISION 3:**<br>**MAGISTRATE JUDGE EVA J. DOSSIER** |

### MEMORANDUM IN SUPPORT OF GOL, L.L.C.'S MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT,** through undersigned counsel, comes Defendant, GOL, L.L.C. (hereinafter sometimes referred to as "GOL" or "Defendant"), which submits this Memorandum in Support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. As a matter of law, there has been no breach of the Brokerage Agreement between GOL and the plaintiff, SEACOR Marine, LLC, which contains express and clear "pay-if-paid" language. Furthermore, to the extent that SEACOR claims any entitlement to funds pursuant to a Trade Agreement entered into between GOL and the bankruptcy debtor, Cox Operating, LLC ("Cox"), such claims are also foreclosed as a matter of law because (1) SEACOR undisputedly is not a party to and has no rights under the Trade Agreement; and (2) SEACOR undisputedly did not provide any "critical vendor" services following Cox's bankruptcy and in fact removed its vessels from service to Cox prior to the bankruptcy filing. Therefore, as a matter of law it was not permitted to receive any funds submitted by the Cox to GOL under the Trade Agreement or pursuant to the bankruptcy court's Orders. Notably, SEACOR has filed liens and a proof of claim within Cox's bankruptcy action in the U.S. Southern District of Texas, submitting itself to the bankruptcy court's jurisdiction. Those claims by SEACOR were filed before the instant lawsuit, seek recovery of the

same amounts sought herein, and are still pending. Regardless, SEACOR's claims in the present suit against GOL still fail as a matter of law for the reasons set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 2018, GOL, LLC and SEACOR Marine, LLC ("SEACOR") entered into a Brokerage Agreement (hereinafter sometimes referred to as the "Agreement").[1] SEACOR appointed GOL as its "agent for obtaining charters for Operator's [SEACOR's] vessels."[2] One of the companies that GOL contracted with, and to whom SEACOR vessels were ultimately chartered, was Cox Operating, LLC ("Cox").[3] Pertinent to this Motion, SEACOR provided vessels to Cox for which invoices were issued between September 30, 2022 and December 14, 2022.[4] The invoices remain unpaid by Cox.[5] As a result, SEACOR was not paid for the charter of its vessels and GOL was not paid the brokerage fee to which it was entitled. Cox filed for bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas on May 14, 2023.[6]

The Brokerage Agreement expressly states "**[u]nder no circumstances shall Broker [GOL] be responsible to Operator [SEACOR] for the Charterer's [Cox's] non-payment of charter hire.**[7] **Broker agrees to undertake all reasonable efforts to collect charter hire from Charterer. Operator retains the right to act on its own behalf in order to collect unpaid invoices.**"[8] In May of 2023, GOL filed liens against various of Cox's oil and gas producing

---

[1] See Brokerage Agreement, attached hereto as Exhibit "A."
[2] Exhibit A, Section 1.
[3] See R. Doc. 1, ¶ VI.
[4] See SEACOR's Proof of Claim filed in Cox's bankruptcy proceeding, attached hereto as Exhibit "B."
[5] R. Doc. 1, ¶ VIII.
[6] R. Doc. 1, ¶ VIII. See also Voluntary Petition, filed in the United States Bankruptcy Court for the Southern District of Texas, Case No. 23-90327. Notably, initially several creditors placed Cox into Involuntary Bankruptcy on May 12, 2023, within the U.S. Eastern District of Louisiana Bankruptcy Court.
[7] Exhibit A, Section 4.D (emphasis added).
[8] Exhibit A, Section 4.D (emphasis added).

properties to secure payment of outstanding invoices, including invoices from SEACOR.[9] SEACOR subsequently filed its own liens against Cox's oil and gas producing properties in several parishes on June 9, 2023.[10] SEACOR also filed a Proof of Claim in Cox's bankruptcy, in which it asserted that Cox was indebted to it in the amount of $2,697,899.50.[11] The Proof of Claim remains pending in the Cox bankruptcy action.

SEACOR's Complaint makes three essential claims: (1) that GOL has an obligation to "provide information and an accounting of…sums received from Cox," including "payments made by Cox to GOL both prior and subsequent to Cox filing for bankruptcy protection"[12]; (2) that GOL failed to undertake all reasonable efforts to collect charter hire from Cox[13]; and (3) that the $13,000,000 (or a portion thereof) which GOL received as part of a bankruptcy court approved Trade Agreement "included the amounts owed by Cox to SEACOR and should have been paid by GOL to SEACOR."[14] SEACOR seeks damages in the full amount of its approximately $2.7 million in unpaid charter hire, plus costs, expenses, legal interest, and attorneys' fees.[15] For the reasons discussed below, SEACOR's claims are without merit as a matter of law and should be dismissed.

## LAW AND ARGUMENT

### 1. Summary Judgment Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV.

---

[9] See GOL's Notice of Perfection, Continuance, or Maintenance of Liens filed in Cox's bankruptcy (Case 23-90324), attached hereto as Exhibit "C." For sake of brevity, GOL is including the actual liens but only the invoices pertaining to SEACOR vessels.
[10] See SEACOR's Notice of Perfection, Continuance, or Maintenance of Liens filed in Cox's bankruptcy (Case 23-90324), attached hereto as Exhibit "D."
[11] Exhibit B.
[12] R. Doc. 1, ¶¶ X - XI
[13] R. Doc. 1, ¶ XIII
[14] *Id.*
[15] R. Doc. 1, p. 4 (prayer for relief).

3

P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The movant has the initial burden to show that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmovant has the burden of proof at trial, the movant meets its initial burden by "merely point[ing] to an absence of evidence" supporting the nonmovant's claim. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). The movant "need not *negate* the elements of the nonmovant's case." *Id.* (first citing *Celotex*, 477 U.S. at 323; and then citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885–86 (1990)). Nor must the movant "set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019).

If the movant meets its initial summary-judgment burden, the burden shifts to the nonmovant to "identify specific evidence in the summary judgment record demonstrating that there is a dispute of material fact concerning the essential elements of its case for which it will bear the burden of proof at trial." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021) (first citing FED. R. CIV. P. 56(a) & (e); and then citing *Celotex*, 477 U.S. at 324). "Speculative theories cannot defeat a motion for summary judgment." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citing *Little*, 37 F.3d at 1075). Nor may a nonmovant "defeat summary judgment with 'conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence.'" *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). "Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine [dispute] of material

fact exists." *Id.* (citing *Little*, 37 F.3d at 1075). If the nonmovant "fails to meet this burden, the motion for summary judgment *must* be granted." *Little*, 37 F.3d at 1076 (emphasis added).

In reviewing the summary-judgment record, the Court draws all reasonable inferences in favor of the nonmovant. *See Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). And the Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

This case is set for a bench trial. "Ordinarily, '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge.'" *Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F.4th 278, 293 (5th Cir. 2023) (quoting *Anderson*, 477 U.S. at 255) (citing *Guzman v. Allstate Assurance Co.*, 18 F.4th 157 (5th Cir. 2021)). "But in a bench trial, the judge acts as 'trier of fact' in place of the jury." *Id.* (quoting *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991)). "In view of that, 'the [Court] has somewhat greater discretion to consider what weight it will accord the evidence' when considering summary judgment." *Id.* (quoting *Placid Oil*, 932 F.2d at 397). "Specifically, 'even at the summary judgment stage[,] a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.'" *Id.* at 293–94 (quoting *Placid Oil*, 932 F.2d at 398). "And 'the [C]ourt may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though [the Court's] decision may depend on inferences to be drawn from what has been incontrovertibly proved." *Id.* (quoting *Placid Oil*, 932 F.2d at 397). GOL notes that this is a contractual dispute and is ripe for consideration at the summary judgment stage.

## 2. **GOL has provided an accounting to SEACOR of the payments made by Cox**

As noted above, SEACOR chartered vessels to Cox pursuant to the Brokerage Agreement with GOL between September 30, 2022 and December 14, 2022. SEACOR's Interrogatory No. 3 requested that GOL:

> Identify by date and amount any sum(s) paid to GOL or any of its affiliated companies or individuals by or on behalf of Cox (including the bankruptcy trustee) from September 1, 2022 to the present other than the "Payment Amount" referenced in the Trade Agreement, including in Your identification the precise purpose of the payment such as identification of the relevant invoice(s) for which the payment was made.[16]

GOL produced its Supplemental Answers to First Set of Interrogatories on February 18, 2025. Therein, GOL produced spreadsheets containing the specific information sought by SEACOR.[17] Accordingly, to the extent GOL owes any duty to provide an accounting to SEACOR, GOL has complied with that duty.

## 3. **GOL has complied with all obligations it may have owed to SEACOR**

The thrust of SEACOR's suit is that GOL breached the Brokerage Agreement between the parties because it failed to "undertake all reasonable efforts to collect charter hire from [Cox]" as required by Section 4.D. of the Agreement. Unfortunately, SEACOR simply conflates Cox's nonpayment with a failure by GOL to take reasonable efforts to collect past due amounts. There is no factual support for this position. SEACOR seems to ask the Court to assume that, despite Cox's financial troubles and ongoing bankruptcy, the real reason it was not paid for its work was because GOL failed to use "reasonable efforts" to collect from Cox. This is despite the fact that SEACOR

---

[16] See GOL, LLC's Supplemental Answers to First Set of Interrogatories, along with documents bates labeled GOL 002084 – 002107 produced in response thereto, attached hereto as Exhibit "E." (the documents bates labeled GOL 002084 – 002107 are subject to the Protective Order entered in this matter at R. Doc. 20).
[17] Exhibit E

knew Cox was not paying its invoices, yet continued to provide vessel services through at least December of 2022.

More importantly, the evidence shows that GOL undertook extensive efforts to facilitate SEACOR in collecting any charter hire owed. Specifically, GOL filed liens against Cox's properties which liens included invoices for SEACOR's vessels.[18] Moreover, GOL preserved those liens in Cox's bankruptcy proceeding by filing a Notice of Perfection, Continuation, or Maintenance of Liens.[19]

Even if SEACOR were correct that GOL failed to use reasonable efforts to collect from Cox, the Brokerage Agreement categorically precludes SEACOR from recovering past-due charter hire from GOL. The Agreement contains a pay-if-paid clause. "A pay-when-paid clause is a term of payment, whereas a pay-if-paid clause is a suspensive condition." *Material Handling Techs., Inc. v. Southland Process Grp. LLC*, No. 16-CV-1297, 2020 WL 1042236, at *4 (W.D. La. Mar. 3, 2020), citing *Tymeless Flooring, Inc. v. Rotolo Consultants, Inc.* 2014-CA-1392 (La. App. 4. Cir. 5/20/15); 172 So. 3d 145, 146. Courts look to the language used in the contract to distinguish between pay-when-paid and pay-if-paid clauses. *Id.* at 152. Section 4.D. of the Brokerage Agreement states, "[u]nder no circumstances shall Broker [GOL] be responsible to Operator [SEACOR] for the Charterer's [Cox's] non-payment of charter hire."[20] This provision speaks for itself. The language **"under no circumstances"** could not be more clear. Even assuming Plaintiff were to prove that GOL failed to use reasonable collection efforts this would not change the fact that SEACOR cannot recover the past due charter hire of $2,697,899.50 from GOL, as the Brokerage Agreement prohibits such a result.[21] Accordingly, at the very least, the instant Motion

---

[18] Exhibit C.
[19] Exhibit C.
[20] Exhibit A, Section 4.D.
[21] Exhibit A, Section 4.D.

should be granted to the extent SEACOR seeks recovery of the alleged full charter hire amount owed by Cox. See *Moncrief v. Tech Pharmacy Services, LLC,* 2025 WL 28642 (N.D. Tex. 2025) (granting partial motion for judgment on the pleadings as to damages).

Overall, Seacor is unable to provide any evidence of what "efforts" would have been successful or changed the outcome in GOL attempting to obtain payment from Cox on Seacor's outstanding invoices. To this end, several creditors took the most drastic step possible and attempted to place Cox into involuntary bankruptcy within the U.S. Eastern District of Louisiana.[22] Even this drastic step did not result in those creditors obtaining payment on their open invoices. Cox then filed for voluntary bankruptcy in the U.S. Southern District of Texas, which bankruptcy matter is still pending.

Furthermore, what has now come to light is that the Cox bankruptcy Trustee has alleged in a $100 million suit against Cox's former owners and directors that Cox was essentially running a "vendor Ponzi scheme."[23] That recently filed suit in the U.S. Eastern District of Louisiana is pending. In light of the allegations, again, there were no further steps that GOL could have taken to obtain payment by Cox on SEACOR's's invoices. Further, the Trustee is continuing to seek recoupment of funds into the bankruptcy estate and SEACOR has filed a pending proof of claim in the U.S. Southern District of Texas bankruptcy action.

As this Honorable Court has previously held, a creditor such as SEACOR's filing of a Proof of Claim subjects it to the jurisdiction of the bankruptcy court for determination of its claim and any related counterclaims or defenses. See *In re Efficient Sols., Inc.*, No. CIV.A. 00-3071,

---

[22] See Involuntary Petition against Cox Operating, LLC filed in the U.S. Bankruptcy Court for the Eastern District of Louisiana, Case 23-10734, R. Doc. 1.
[23] See Complaint, "Michael D. Warner, solely in his official capacity as Chapter 7 Trustee of Cox Operating L.L.C. et al v. Bard Cox, et al, U.S. Eastern District of Louisiana", Civ. No. 2:25-cv-00943, Rec. Doc. 1, and specifically p. 37.

2000 WL 1876356, at *5 (E.D. La. Dec. 20, 2000) (Vance, J.) (addressing that "the Supreme Court has held that when a creditor files a proof of claim against a bankrupt estate, he triggers a process of 'allowance and disallowance of claims' thereby subjecting himself to the bankruptcy court's equitable powers") (citing *Granfinanciera v. Nordberg*, 492 U.S. 33, 58-59, (1989); *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990)); see also *In re OCA, Inc.*, No. CIV.A. 06-3811, 2007 WL 1728914, at *3 (E.D. La. June 13, 2007) (Vance, J.) ("By filing a proof of claim, [the creditor] submitted to the equitable jurisdiction of the bankruptcy court."). Filing a proof of claim binds a creditor to the bankruptcy court's jurisdiction as to a determination of the validity and amount of the claim and courts often consider "filing a proof of claim as tantamount to filing a civil complaint." *In re Raygoza*, 556 B.R. 813, 823 (Bankr. S.D. Tex. 2016).

To this end, SEACOR itself has taken extensive steps to obtain payment from Cox or its bankruptcy estate directly, which was its right to do under the Brokerage Agreement — "Operator retains the right to act on its own behalf in order to collect unpaid invoices directly from the Charterer [Cox]."[24] Here, SEACOR (1) sought to negotiate its open invoices directly with Cox after the SEACOR POWER liftboat struck a Cox pipeline causing damage, (2) filed a Proof of Claim in the bankruptcy proceeding, and (3) filed liens against Cox's assets under the Louisiana Oil Well Lien Act. Simply put, SEACOR took its own steps to obtain payment directly from Cox (some of which are still pending) and SEACOR cannot point to any "efforts" that GOL could have taken that would have changed the outcome or current circumstances in the Cox bankruptcy.

---

[24] Exhibit A, Section 4.D.

### 4. Any Post-Petition Payments to GOL made pursuant to an Order of the Bankruptcy Court could not be disbursed to SEACOR because SEACOR did not continue providing vessel services to Cox as a critical vendor

SEACOR places significant emphasis on the fact that GOL and Cox entered into a post-bankruptcy court-approved Trade Agreement pursuant to which GOL was allegedly paid the sum of $13,000,000.[25] Plaintiff contends that at least a portion of this amount was intended to satisfy the amount owed by Cox to SEACOR for unpaid charter hire, and that GOL should have therefore remitted payment to SEACOR out of the $13,000,000.[26] This is verifiably false. The Trade Agreement makes no provision for an allocation of funds to SEACOR.[27] Furthermore, any post-petition payments made to GOL by Cox were the result of GOL's agreement to serve as a court-approved essential vendor (often referred to as a "critical vendor") in the Cox bankruptcy.

On May 16, 2023, the Court overseeing Cox's bankruptcy in the United States Bankruptcy Court for the Southern District of Texas entered an Order (A) Authorizing the Payment of Certain (I) Essential Vendor Obligations, (II) Marketing Expenses, And (III) Outstanding Orders, And (B) Granting Related Relief (D.I. 112) (the "Order"), authorizing Cox and its Co-Debtors to make payments to certain essential or critical vendors.[28] Paragraph 2 of the Order states that "Any party that accepts payment from the Debtors on account of a prepetition Oil and Gas Obligation shall be deemed to have agreed to the terms and provisions of this Order."[29] Paragraph 3 authorizes the Debtors "to require that, as a condition to receiving any payment of a prepetition claim under this Order, a payee maintain or apply, as applicable, terms during the pendency of the Chapter 11 Cases

---

[25] R. Doc. 1, ¶ XII
[26] R. Doc. 1, ¶ XIII.
[27] The Trade Agreement is subject to a confidentiality provision and is also the subject of a Protective Order issued by Magistrate Judge Eva J. Dossier. Accordingly, GOL does not attach it to this Motion, but wishes to reserve the right to file a copy of the Trade Agreement under seal should the Court feel it appropriate.
[28] See R. Doc. 112 in Case No. 23-90324 filed in the United States Bankruptcy Court for the Southern District of Texas, attached hereto as Exhibit "F."
[29] Exhibit F.

10

that are the same or better than the trade terms that existed immediately prior to the Petition Date…"[30] It also provides that "if a payee, after receiving a payment of a prepetition claim under this Order, ceases to provide Customary Trade Terms, then the Debtors may, in their sole discretion, deem such payment to apply instead to any post-petition amount that may be owing to such payee or treat such payment as an avoidable post-petition transfer of property."[31]

It is undisputed that SEACOR removed its vessels from Cox jobs <u>prior</u> to Cox filing a voluntary petition for bankruptcy in the U.S. Southern District of Texas. It is also undisputed that SEACOR did not continue providing vessels to Cox in furtherance of essential or critical vendor services following Cox's filing of bankruptcy.

Caselaw interpreting the Bankruptcy Code makes clear that GOL was not at liberty to disburse funds to SEACOR that GOL received under the Order as an essential vendor.[32] In *Meridian Automotive Systems-Composites Operations, Inc.*, 372 B.R. 710 (D. Del. Aug. 23, 2007), a supplier was compelled to disgorge $1.25 million which it had received from the Debtor under critical vendor orders after failing to timely and adequately supply the Debtor with products pursuant to the parties' trade agreement. The Debtor filed a motion, which was granted by the Court, arguing that upon acceptance of payment pursuant to the critical vendor orders, the supplier became obligated to continue to supply products to the Debtor during the pendency of the bankruptcy on the parties' customary trade terms. The trade agreement in *Meridian* provided that if a critical vendor subsequently refused to supply goods to the Debtor on customary trade terms, the critical vendor would be required to repay any payment received in excess of the post-petition

---

[30] Exhibit F
[31] *Id.*
[32] GOL notes that if Seacor has an issue with GOL's disbursement of funds under a Trade Agreement entered into with the Debtor under the jurisdiction of the U.S. Southern District of Texas's Orders, then the U.S. Southern District of Texas Bankruptcy Court is the proper forum for Seacor to raise such issues. Regardless, the claim by Seacor still fails as a matter of law.

obligations owed to the critical vendor at that time. The Court granted the Debtor's motion, finding that the supplier's refusal to ship products to the Debtor and demanding a price increase violated the trade agreement.

The only reason GOL received post-petition payments from Cox was because it agreed to serve as an essential vendor. SEACOR, on the other hand, did not continue providing services to Cox as an essential vendor, and has therefore not received any post-petition payments from Cox. As noted above, SEACOR ceased providing vessel services to Cox in December of 2022.[33] In light of the language of the Order from the Bankruptcy Court and consistent with the holding in *Meridian*, if GOL had provided some of the essential vendor payments to an entity that ceased providing services to the Debtors, such as SEACOR, Cox could have deemed those payments as payment for post-petition services rendered by GOL or could have deemed them avoidable post-petition transfers and sought their return under section 549 of the Bankruptcy Code. In sum, GOL was not at liberty to share any post-petition essential vendor payments with SEACOR, as SEACOR did not agree to continue providing services to Cox as an essential vendor. This would have been a violation by GOL of an Order of the U.S. Southern District of Texas Bankruptcy Court. Seacor's claim fails as a matter of law.

## **CONCLUSION**

The terms of the Brokerage Agreement are clear and unambiguous and contain a pay-if-paid clause. GOL is not responsible for Cox's failure to pay SEACOR's invoices, nor has GOL received any payments from Cox which should have been applied to SEACOR invoices. Further, GOL was precluded from disbursing any post-petition payments to vessel owners who ceased providing services to Cox and its Co-Debtors, like SEACOR. For all of the foregoing reasons,

---

[33] Exhibit B.

GOL, LLC respectfully submits that it is entitled to judgment as a matter of law. Accordingly, GOL, LLC respectfully requests that SEACOR Marine, LLC's, claims against it be dismissed, with prejudice.

                                                Respectfully submitted,

                                                ***/s/Kyle A. Khoury***
                                                Kyle A. Khoury, T.A. (#33216)
                                                Aaron B. Greenbaum (#31752)
                                                Morenike Erinkitola (#41015)
                                                PUSATERI, JOHNSTON, GUILLOT
                                                & GREENBAUM, LLC
                                                1100 Poydras Street, Suite 2250
                                                New Orleans, Louisiana 70163
                                                Telephone: (504) 620-2500
                                                Facsimile: (504) 620-2510
                                                Kyle.Khoury@pjgglaw.com
                                                Aaron.Greenbaum@pjgglaw.com
                                                Morenike.Erinkitola@pjgglaw.com
                                                **ATTORNEYS FOR DEFENDANT, GOL, LLC**